**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ALBERT L. P., | ) | NO. CV 20-581-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | **AND ORDER OF REMAND** |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied, and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on January 21, 2020, seeking review of the Commissioner's denial of benefits. The parties consented to proceed before a United States Magistrate Judge on March 26, 2020. Plaintiff filed a motion for summary judgment on August 1, 2020.

Defendant filed a motion for summary judgment on October 6, 2020.  The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed January 23, 2020.

**BACKGROUND**

Plaintiff asserts disability since August 28, 2015, based on allegations of neck and low back injury/pain/radiculopathy, right shoulder/arm/wrist pain, left wrist pain, diabetes and bipolar disorder (Administrative Record ("A.R.") 650-51, 678, 698).  Dr. Van Huy Vu, a pain management specialist, treated Plaintiff during most of the alleged disability period.  Dr. Vu diagnosed lumbar "HNP" (herniated nucleus pulposus), cervical radiculopathy, lumbar sprain, lateral epicondylitis in the right elbow and carpal tunnel syndrome (A.R. 1162-63).  According to Dr. Vu, the diagnosed impairments were evidenced by an October, 2015 lumbar spine MRI, February, 2016 EMG/NCV studies, and 2015-17 examination findings (i.e., reduced range of motion, positive straight leg raising, abnormal gait, sensory loss, reflex loss, tenderness, muscle spasm, motor loss, muscle atrophy, muscle weakness, and impaired appetite).  Id.  In 2018, Dr. Vu opined that, since December of 2015, Plaintiff has been limited to: (1) lifting less than 10 pounds rarely; (2) sitting for only one hour at a time, standing for only 20 minutes at a time, sitting for a total of less than two hours in an eight-hour day, and standing/walking for a total of less than two hours in an eight-hour day; (3) rarely twisting or climbing stairs; (4) never stooping, crouching/squatting or climbing ladders; (5) using his hands/fingers/arms for fine and gross manipulation and reaching for less than a full workday;

2

(6) working with a sit/stand option with walking breaks every hour for 10 minutes at a time and with unscheduled breaks every hour for 10 minutes at a time; and (7) using an assistive device for Plaintiff's right foot (A.R. 1163-66; see also A.R. 1161 (additional opinion noting lifting/standing/walking limits due to lumbar disc herniation causing numbness in the legs)).  Dr. Vu also opined that Plaintiff would be off task more than 25 percent of a workday, and would miss more than four days of work per month (A.R. 1165-66).

An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 96-106, 532-61).  The ALJ found that Plaintiff has "severe" multi-level degenerative changes of the lumbar spine with narrowing and radiculopathy, cervical radiculopathy, right acromioclavicular joint osteoarthritis with tendinitis/tendinosis, right elbow lateral epicondylitis, right fifth digit tenosynovitis, carpal tunnel syndrome, obesity and diabetes mellitus with neuropathy (A.R. 98).  However, the ALJ deemed Plaintiff capable of performing a range of light work, limited to no more than: (1) frequent climbing of ramps and stairs; (2) occasional climbing of ladders, ropes and scaffolds; (3) occasional balancing, stooping, kneeling, crouching, crawling and bending; (4) occasional at or above shoulder lifting in the bilateral upper extremities; (5) occasional forceful gripping or grasping with the bilateral upper extremities; and (6) work not requiring frequent or repetitive movements of the head from side to side or up or down, i.e., work should be primarily in front of the worker.  See A.R. 101-04 (giving "little weight" to Dr. Vu's opinions).  The ALJ identified certain light jobs Plaintiff assertedly could perform, and, on that

1  basis, denied disability benefits through October 24, 2018, the date

2  of the decision (A.R. 105-06 (adopting vocational expert testimony at

3  A.R. 552-54)).

4

5      The Appeals Council considered additional evidence but denied

6  review (A.R. 1-6, 11-27, 29-92, 113-530).

7

8  **STANDARD OF REVIEW**

9

10      Under 42 U.S.C. section 405(g), this Court reviews the

11  Administration's decision to determine if: (1) the Administration's

12  findings are supported by substantial evidence; and (2) the

13  Administration used correct legal standards.  See Carmickle v.

14  Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

15  499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner,

16  682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "such

17  relevant evidence as a reasonable mind might accept as adequate to

18  support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401

19  (1971) (citation and quotations omitted); see also Widmark v.

20  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

21

22      If the evidence can support either outcome, the court may

23      not substitute its judgment for that of the ALJ.  But the

24      Commissioner's decision cannot be affirmed simply by

25      isolating a specific quantum of supporting evidence.

26      Rather, a court must consider the record as a whole,

27      weighing both evidence that supports and evidence that

28      detracts from the [administrative] conclusion.

1  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and
2  quotations omitted).

3

4      Where, as here, the Appeals Council "considers new evidence in
5  deciding whether to review a decision of the ALJ, that evidence
6  becomes part of the administrative record, which the district court
7  must consider when reviewing the Commissioner's final decision for
8  substantial evidence." <u>Brewes v. Commissioner</u>, 682 F.3d at 1163.
9  "[A]s a practical matter, the final decision of the Commissioner
10  includes the Appeals Council's denial of review, and the additional
11  evidence considered by that body is evidence upon which the findings
12  and decision complained of are based." <u>Id.</u> (citations and quotations
13  omitted).[1]  Thus, this Court has reviewed the evidence submitted for
14  the first time to the Appeals Council.

15

16                              **DISCUSSION**

17

18      For the reasons discussed below, the Court finds that the ALJ
19  materially erred in the evaluation of the medical evidence.
20  ///
21  ///

22  _____

23      [1]    And yet, the Ninth Circuit sometimes had stated that
   there exists "no jurisdiction to review the Appeals Council's
24  decision denying [the claimant's] request for review." <u>See,</u>
   <u>e.g.,</u> <u>Taylor v. Commissioner</u>, 659 F.3d 1228, 1233 (9th Cir.
25  2011); <u>but see</u> <u>Smith v. Berryhill</u>, 139 S. Ct. 1765 (2019) (court
   has jurisdiction to review Appeals Council's dismissal of request
26  for review as untimely); <u>see also</u> <u>Warner v. Astrue</u>, 859 F. Supp.
   2d 1107, 1115 n.10 (C.D. Cal. 2012) (remarking on the seeming
27  irony of reviewing an ALJ's decision in the light of evidence the
   ALJ never saw).
28

I. **Summary of the Medical Record**

    A. **Medical records predating the ALJ's decision**

    The medical records consist primarily of treatment notes from Dr. Vu, Dr. Richard Lee (a primary care physician) and other providers with Optum Care Medical Group and the Centers for Family Medicine (Dr. Lee's practice groups). Dr. Lee and his associates treated Plaintiff from June of 2006 through at least February of 2019, principally for diabetes (diagnosed in 2013) with lower extremity neuropathy, associated hypertension, hyperlipidemia and obesity. See A.R. 167-530 (documents Plaintiff provided to the Appeals Council for review, some of which were duplicates of documents provided to the ALJ, e.g., A.R. 846-68, 1185-1232, 1270-93). Dr. Vu treated Plaintiff in connection with his worker's compensation claim from August of 2015 through at least September of 2017 (A.R. 1023-95, 1133-60).

    In January of 2015, Plaintiff reported to Dr. Lee's associate that Plaintiff had right-sided back pain from a 6-mm disc protrusion at L5-S1 requiring surgery or injections (A.R. 327). Plaintiff reportedly then was being treated by a worker's compensation doctor for pain (A.R. 328; see also A.R. 914-17 (report summarizing medical records from Dr. David Jeffrey Weil in 2013 and 2014)) (A.R. 909-10). Reportedly, Plaintiff had sustained a work-related low back injury in November of 2014, and cumulative trauma to his head, neck, right shoulder, right elbow and bilateral wrists and hands in 2013/2014 (A.R. 909-10).

///

1    Dr. Vu subsequently treated Plaintiff for lumbar disc

2  protrusion/displacement, lumbar musculoligamentous injury, lumbar

3  radiculopathy, right shoulder myoligamentous injury, right elbow

4  lateral epicondylitis, bilateral wrist sprain/strain and left carpal

5  tunnel syndrome/wrist internal derangement (A.R. 1023-95, 1133-60; see

6  also A.R. 1089-93 (October, 2015 lumbar spine MRI report); A.R.

7  1094-95 (October, 2015 lumbar spine x-ray report); A.R. 1154-55

8  (September, 2017 right elbow MRI report); A.R. 1156-57 (October, 2017

9  right wrist MRI report); A.R. 1158 (October, 2017 left wrist MRI

10  report); A.R. 1159-60 (September, 2017 right shoulder MRI report)).

11  Dr. Vu prescribed physical therapy, Gabapentin, pain cream, wrist

12  braces, bilateral wrist injections, right elbow injections, cervical

13  and lumbar spine epidural steroid injections and sacral-iliac joint

14  injections (A.R. 1025-26).  Dr. Vu requested authorization for a

15  consultation with an orthopedist for Plaintiff's right elbow and a

16  spine specialist for Plaintiff's spine (A.R. 1025, 1135; see also A.R.

17  1072-79, 1261-65 (reports of epidural injections)).[2]

18

19    Dr. Vu completed a "Medical Opinion Regarding Physical Capacity

20  for Work" form dated March 9, 2018 (A.R. 1161).  Dr. Vu opined that

21  Plaintiff was limited to: (1) lifting 10 pounds for 1/3 of the day and

22

23    [2]   Dr. Vu's colleague, Dr. Mike Tran, opined in August of
     2015 that Plaintiff could return to work limited to lifting no
24   greater than 10 pounds, no repetitive bending, stooping or
     squatting, no standing or walking for greater than 1-2 hours/day,
25   no repetitive gripping, grasping or torquing activities and no
     overhead work (A.R. 1067, 1069).  However, Dr. Vu subsequently
26   ordered Plaintiff to remain off work from September 24, 2015
     through at least September 4, 2017 (A.R. 1026, 1030, 1034, 1038,
27   1045, 1048, 1051, 1054, 1056, 1058, 1059, 1135, 1138, 1141, 1144,
     1147, 1150, 1153).
28

five pounds for 2/3 of the day due to lumbar disc herniation; and
(2) standing or walking 30 minutes at a time without a break due to
lumbar disc herniation causing numbness in his legs (A.R. 1161).  Dr.
Vu also completed a "Lumbar Spine Medical Source Statement" dated
April 12, 2018, indicating that he had treated Plaintiff once a month
for the past three years for lumbar herniated nucleus pulposus,
cervical radiculopathy, lumbar sprain, lateral epicondylitis in the
right elbow and carpal tunnel syndrome (A.R. 1162-66).  According to
Dr. Vu, these impairments were evidenced by the October, 2015 lumbar
spine MRI, February, 2016 EMG/NCV studies, and 2015-17 examination
findings (i.e., reduced range of motion, positive straight leg
raising, abnormal gait, sensory loss, reflex loss, tenderness, muscle
spasm, motor loss, muscle atrophy, muscle weakness, and impaired
appetite), which cause constant pain with numbness and tingling (A.R.
1162-66).  Dr. Vu opined that, since December of 2015, Plaintiff could
lift less than 10 pounds rarely, walk 1/4 a city block, sit for only
one hour at a time, stand for only 20 minutes at a time, sit for a
total of less than two hours in an eight-hour day, stand/walk for a
total of less than two hours in an eight hour day, rarely twist and
climb stairs, never stoop, crouch/crawl or climb ladders, would have
limits using his hands/fingers/arms for fine and gross manipulation
and reaching, would require a sit/stand option and walking breaks
every hour for 10 minutes and unscheduled breaks every hour for 10
minutes, would require the use of an assistive device on Plaintiff's
right foot, would be off task more than 25 percent of a workday, and
would miss more than four days of work per month (A.R. 1163-66).
///
///

1    In April of 2018, Plaintiff reported to Dr. Lee, complaining of
2    back pain radiating to his right leg (A.R. 207).  According to
3    Plaintiff, this pain had been an issue since 2014, and Plaintiff had
4    been treated by a pain management specialist (Dr. Vu), but Plaintiff
5    had been forced to stop such treatment because of insurance issues
6    (A.R. 207).  Dr. Lee ordered a lumbar spine MRI to evaluate
7    Plaintiff's sciatica, which showed multilevel degenerative changes
8    resulting in moderate bilateral L4-L5 and mild to moderate L5-S1
9    neural foraminal narrowing with no significant central spinal canal
10   stenosis (A.R. 205-09).  At his next visit in May of 2018, Plaintiff
11   complained of chronic fatigue, lumbar spine pain, shoulder pain which
12   Plaintiff said limited him to lifting no more than 10 pounds, and
13   right foot pain for which he was referred for physical therapy (A.R.
14   189-91).

15

16   In August of 2018, Plaintiff complained of right shoulder pain,
17   elbow pain, wrist pain and right sided sciatica, for which he was
18   given steroid injections in his right elbow and an elbow brace for
19   lateral epicondylitis, as well as a wrist brace for tendinitis (A.R.
20   181-83).  Dr. Lee prescribed Tramadol for pain in September of 2018
21   (A.R. 171-73).  Plaintiff returned for a steroid injection for his
22   right shoulder in October of 2018, reporting that physical therapy had
23   not helped and he was still having trouble lifting more than 10 pounds
24   (A.R. 177-80).  An x-ray of the right shoulder showed minor
25   degenerative joint disease and Plaintiff was referred to an orthopedic
26   specialist (A.R. 179).
27   ///
28   ///

**B.  Medical records postdating the ALJ's decision**

    In December of 2018, Plaintiff presented to orthopedic specialist
Dr. Raymond Klug, reporting a history of physical therapy and
cortisone injections which had provided only partial relief for
Plaintiff's pain (A.R. 43).  Reportedly, Plaintiff also had been
prescribed Gabapentin and Tramadol (A.R. 51, 121, 127, 129, 137-38).
A December, 2018 cervical spine MRI reflected multilevel degenerative
change with mild to moderate right neural foraminal narrowing at C4-C5
and C7-T1 (A.R. 35-36).  Lumbar spine x-rays done in February of 2019
reflected lumbar spondylosis (A.R. 36).  Another doctor working in Dr.
Klug's practice, orthopedic specialist Dr. Kusharga Verma, reviewed
these results and examined Plaintiff in February of 2019 (A.R. 33,
36).  At that time, Plaintiff reported lumbar spine pain, decreased
cervical spine pain, and a recent injection at C7 which reportedly had
not helped (A.R. 33, 36).  According to Dr. Verma, Plaintiff had
positive Spurling's sign and Durkin's compression on the right side,
with pain radiating to his fingers (A.R. 33-34).  Dr. Verma diagnosed
lumbar and cervical spine stenosis and radiculopathy, with pain in the
right shoulder, the back of the arm and the hand with hand numbness,
as well as pain in the right leg and the back of the leg (A.R. 36-37).
Dr. Verma requested further MRI imaging and an EMG study (A.R. 37).

    Plaintiff presented to another pain management doctor for
examination in January of 2019 (A.R. 126-27).  At that time, Plaintiff
exhibited limited cervical spine range of motion due to pain with
positive facet loading, 2/4 reflexes, positive shoulder impingement
testing with mildly impaired range of motion, tenderness in the lumbar

spine with muscle spasm and positive facet loading, and a positive
right straight leg raising test (A.R. 126-27).  The doctor diagnosed
lumbar radiculopathy, right leg pain, back muscle spasm, right leg
weakness, cervicalgia, cervical radiculopathy, bilateral shoulder pain
and other chronic pain for which Plaintiff was prescribed Cymbalta
(A.R. 128).  Plaintiff had been given cervical and lumbar epidural
steroid injections at C6-C7 and L4-L5/L5-S1 in July, August, October
and November of 2018 and January of 2019, and Plaintiff was referred
for a spine surgery evaluation (A.R. 123-25, 130-31, 133-35, 139,
141-47).

Following these consultations, Dr. Lee completed a "Physical
Medical Source Statement" dated February 13, 2019, opining that
Plaintiff has significant limitations due to lumbar spinal stenosis
and cervical radiculopathy (e.g., Plaintiff could sit for only one
hour before needing to get up, could sit for only a total of two hours
in an eight hour workday, could stand/walk less than two hours in an
eight hour workday, would need to take breaks every hour for 20
minutes at a time, and could lift no more than 10 pounds) (A.R.
12-14).

   **C.**   **The opinions of the medical examiner and the state agency**
         **physician**

On February 10, 2016, non-treating orthopedic surgeon Dr.
Simpkins prepared an "Agreed Medical Evaluation" (A.R. 908-35).
Plaintiff reportedly was being treated by worker's compensation
doctors, including Dr. Vu, for, inter alia: (1) a low back injury from

November 22, 2014, consisting of bulging discs at L4, L5 and S1, for
which Plaintiff had been given lumbar epidural injections, pain
medication and physical therapy; and (2) cumulative trauma to his
head, neck, right shoulder, right elbow and bilateral wrists and hands
causing pain for which Plaintiff had received injections, pain
medication, physical therapy and acupuncture (A.R. 908-11).  Plaintiff
complained of radiating neck pain with stiffness and headaches, right
shoulder pain radiating to the forearm with tightness and popping,
weakness, numbness, bilateral wrist/hand pain with grip loss, and
continuous radiating low back pain with weakness, numbness and
tingling in the right leg to the toes (A.R. 911-12).  Dr. Simpkins
reviewed some medical records from 2009-15, including a December, 2014
lumbar spine MRI, some chiropractic treatment records from September
and October of 2015, two 2015 work status reports by Dr. Vu, and some
physical therapy notes from 2015 (A.R. 916-17).

On examination, Plaintiff reportedly had cervical and lumbar
spine tenderness, neurological deficits in the ulnar nerves and right
L4, L5 and S1 nerve root distributions, tenderness in the right
shoulder and elbow, positive right Hawkin's test, and positive left
carpal tunnel canal compression (A.R. 919-26).  EMG/Nerve conduction
testing showed evidence of bilateral C6 and C7 cervical radiculopathy,
right L5 and S1 lumbosacral radiculopathy, but no evidence of
neuropathy (A.R. 926).  Dr. Simpkins diagnosed axial neck pain with a
note to rule out radiculitis, right posterior shoulder/midback pain
with myofascial tenderness, mechanical back pain with a note to rule
out radiculitis, right medial and lateral epicondylitis, right radial
tunnel tenderness with a note to rule out radial tunnel syndrome, and

possible bilateral carpal tunnel syndrome (A.R. 926-27).  Dr. Simpkins
opined that Plaintiff should be precluded from: (1) repetitive
positioning of the head and repetitive lifting at or above shoulder
level; (2) repetitive forceful gripping and grasping; (3) lifting,
pushing or pulling over 35 pounds; and (4) bending or stooping for
greater than 50 percent of the workday (A.R. 929).

In September of 2016, a non-examining state agency physician
reviewed some of the medical records and opined that Plaintiff had not
provided sufficient evidence to explain why he had income after the
alleged onset date through May of 2016.[3]  The state agency physician
indicated that there was less than 12 months of records to review
after May of 2016 (A.R. 567, 571).  Nevertheless, on the basis of this
limited review, the state agency physician opined that Plaintiff was
capable of light work with some frequent or occasional postural
limitations (A.R. 574-75).

**II.  <u>The ALJ Erred in the Evaluation of the Medical Evidence.</u>**

The ALJ summarized some medical records concerning Plaintiff's
lumbar spine, cervical spine and upper extremity impairments,
highlighting examinations in July of 2016 and March of 2017 that
assertedly showed no significant findings.  <u>See</u> A.R. 102-03 (citing
A.R. 819 (December, 2011 treatment note for chest pain, high glucose

---

[3]     At the hearing before the ALJ, Plaintiff explained that
this "income" was a vacation time payout, <u>see</u> A.R. 536-37.  The
ALJ found that Plaintiff "has not engaged in substantial gainful
activity since August 28, 2015, the alleged onset date" (A.R.
98).

and cough which contains no detailed examination findings) and A.R.
846-47 (a treatment note from Dr. Lee concerning diabetes, a thyroid
issue and forehead numbness, which note does not concern pain issues).
The ALJ characterized the record as containing "no evidence
establishing the impairments are so severe as to prevent the claimant
from basic work activities" (A.R. 102).  The ALJ also characterized
the record as reflecting "relatively conservative treatment" for pain
(i.e., treatment with pain medication "not indicative of disability-
level impairments," epidural injections and physical therapy "not
appear[ing] to have been over a longitudinal period of time," and with
no "other more invasive or drastic treatment plan" recommended such as
surgery) (A.R. 102-03).

        The ALJ, who did not have the benefit of Dr. Lee's February, 2019
opinion, rejected Dr. Vu's 2018 opinion in favor of the 2016
evaluations by Dr. Simpkins and the state agency physician (A.R. 103-
04).  The ALJ did not acknowledge that Dr. Vu was a treating
physician, and the ALJ did not discuss any of Dr. Vu's treatment
records (A.R. 102-04).  The ALJ gave "little weight" to Dr. Vu's
opinions, stating:

        Less weight is given to [Dr. Vu's] opinions given that they
        are inconsistent with the objective medical evidence, as
        well as the opinions of the agreed medical examiner, Dr.
        Simpkins.  The extreme limitations are not consistent with
        the mostly mild to moderate clinical findings detailed
        above.  Based on the overall evidence, the undersigned has
        found that a reduced light residual functional capacity is

1    appropriate given the combination of severe impairments.

2

3    (A.R. 104).

4

5        A treating physician's conclusions "must be given substantial

6    weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see

7    Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must

8    give sufficient weight to the subjective aspects of a doctor's

9    opinion. . . .  This is especially true when the opinion is that of a

10   treating physician") (citation omitted); see also Garrison v. Colvin,

11   759 F.3d 995, 1012 (9th Cir. 2014) (discussing deference owed to the

12   opinions of treating and examining physicians).  Even where the

13   treating physician's opinions are contradicted, as here, "if the ALJ

14   wishes to disregard the opinion[s] of the treating physician he . . .

15   must make findings setting forth specific, legitimate reasons for

16   doing so that are based on substantial evidence in the record."

17   Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation,

18   quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d at

19   762 ("The ALJ may disregard the treating physician's opinion, but only

20   by setting forth specific, legitimate reasons for doing so, and this

21   decision must itself be based on substantial evidence") (citation and

22   quotations omitted).

23

24       The reasons the ALJ stated for rejecting Dr. Vu's treating

25   physician opinions do not comport with these authorities.  First, the

26   fact that Dr. Vu's opinions were inconsistent with Dr. Simpkins'

27   opinion triggers rather than satisfies the requirement of stating

28   "specific, legitimate reasons" for rejecting a treating physician's

15

opinion.  See, e.g., Valentine v. Commissioner, 574 F.3d 685, 692 (9th Cir. 2007); Orn v. Astrue, 495 F.3d 625, 631-33 (9th Cir. 2007).

Second, there is no medical opinion evidence supporting the ALJ's assertions that Dr. Vu's opinions are inconsistent with "the objective medical evidence," or that the medical record shows "mostly mild to moderate clinical findings."  The ALJ failed to acknowledge Dr. Vu's treatment notes or the detailed findings on which Dr. Vu expressly based his opinions (A.R. 102-04).  The ALJ also failed to acknowledge similar treatment notes and findings from Dr. Lee that predated the ALJ's decision (A.R. 102-04).  The ALJ's lay inferences from medical records cannot constitute specific, legitimate reasons for discounting Dr. Vu's opinions.  See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record).  Neither the ALJ nor this Court possesses medical expertise sufficient to determine whether Dr. Vu's opinions are inconsistent with "the objective medical evidence" or "the clinical findings."  To the extent the ALJ may have relied on the far earlier opinions of the state agency physician and the agreed medical examiner (Dr. Simpkins), those opinions did not have the benefit of a significant portion of the

///

///

16

1  medical record generated during the alleged disability period.[4]  This
2  later portion of the record reflected ongoing treatment with steroid
3  injections without reported relief, as well as referrals for surgical
4  evaluations.

5

6      As indicated above, Dr. Vu rendered opinions limiting Plaintiff's
7  capacity far more profoundly than did the ALJ.  Without a medical
8  expert to interpret all of the record evidence relevant to the alleged
9  disability period, the ALJ's lay speculation that such evidence is
10 inconsistent with Dr. Vu's opinions cannot furnish a specific,
11 legitimate reason to discount those opinions.

12

13 **III.  The Court is Unable to Deem the ALJ's Errors Harmless; Remand for**
14     **Further Administrative Proceedings is Appropriate.**

15

16     The Court is unable to conclude that the ALJ's errors in the
17 evaluation of the medical evidence were harmless.  See Marsh v.
18 Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (even though the district
19 court had stated "persuasive reasons" why the ALJ's error in regard to
20 the treating physician's opinion was harmless, the Ninth Circuit

21

22  ────────────────

23      [4]    In discounting the opinion of the state agency
    physician, the ALJ acknowledged this deficiency, stating that the
    agency physician "did not treat the claimant over a significant
24  period of time and did not have the opportunity to review the
    medical records in its [sic] entirety" (A.R. 104).  Yet, these
25  same discounting factors would apply with even greater force to
    the opinion of the agreed medical examiner.  The agreed medical
26  examiner never treated Plaintiff and had available fewer of the
    medical records than those available to the agency physician.
27  Yet, the ALJ accorded "great weight" to the opinion of the agreed
28  medical examiner (A.R. 103).

remanded because "we cannot 'confidently conclude' that the error was harmless"); Treichler v. Commissioner, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency"); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error "is harmless where it is inconsequential to the ultimate non-disability determination") (citations and quotations omitted); McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (error not harmless where "the reviewing court can determine from the 'circumstances of the case' that further administrative review is needed to determine whether there was prejudice from the error"). Here, the vocational expert testified that if a person were limited by the need for a 10 minute break every hour – just one of the limitations that Dr. Vu assessed – it would eliminate competitive employment (A.R. 554-55, 557).

Remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. McLeod v. Astrue, 640 F.3d at 888; see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Treichler v. Commissioner, 775 F.3d at 1101 n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Garrison v. Colvin, 759 F.3d at 1020 (court

will credit-as-true medical opinion evidence only where, <u>inter alia</u>, "the record has been fully developed and further administrative proceedings would serve no useful purpose"); <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180-81 (9th Cir.), <u>cert. denied</u>, 531 U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").  There remain significant unanswered questions in the present record.  <u>Cf.</u> <u>Marsh v. Colvin</u>, 792 F.3d at 1173 (remanding for further administrative proceedings to allow the ALJ to "comment on" the treating physician's opinion).

**CONCLUSION**

For all of the foregoing reasons,[5] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 8, 2020.


                              _____
                                       /s/
                              CHARLES F. EICK
                              UNITED STATES MAGISTRATE JUDGE


_____

[5]     The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.